DENT v. RADMANN.

JANSSEN v. PATTERSON and others.

*District Court, E. D. New York.* March 9, 1880.

ATTACHMENT — ATTACHABLE CREDIT — CONDITIONAL LIABILITY. — The difference between the charter money and the freight list of a steamer, payable upon the performance of the voyage and the collection of the freight according to the bills of lading, is not an attachable credit until the performance of these conditions.

SAME — ANSWER OF GARNISHEE — PAYMENT OF DEBT INTO COURT. — The answer of the garnishee, admitting an indebtedness for this difference of freight, is not conclusive as between two attaching creditors, upon the impounding of the amount of the debt after its payment into the registry of the court, in a proceeding *in rem* to try the title to the fund.

PAYMENT OF FUND — PROOF OF CLAIMANT. — In disposing of a fund in its registry it is competent for a court of admiralty to require proof of the right of a claimant to any part of the same.

In Admiralty.

*Butler, Stillman & Hubbard,* for Dent, Patterson and others.

*Beebe, Wilcox & Hobbs,* for Radmann and Janssen.

BENEDICT, J. In order to a correct understanding of the questions presented in the above entitled causes it will be necessary to state with some detail the proceedings had therein.

The first action was commenced by John Dent, Jr., to

recover of Carl Radmann damages for the non-fulfilment by Radmann of a charter of the steamer Croft, owned by Dent.

Dent's libel was filed December 7, 1877, and after statement of the cause of action, and that the damages amounted to $4,945.42, it avers that Radmann then had credits and effects in the hands of William Patterson, John Doe and Richard Roe, owners of the steamship Blagden, then within this district. The libel prayed for process in due form of law against Radmann, and that, in case he should not be found, his goods and chattels be attached; and, if sufficient goods and chattels should not be found, that his credits and effects be attached in the hands of William Patterson, John Doe and Richard Roe, owners of the steamship Blagden, garnishees. Upon the filing of this libel, process as prayed for was issued, upon which the marshal made due return that he had been unable to find the defendant Radmann, or to attach his goods and chattels, and accordingly had, on the seventh day of December, attached his credits and effects in the hands of William Patterson. On the eleventh of December Patterson entered his appearance in Dent's action, as garnishee, and filed an answer, wherein he states that the owners of the steamship Blagden are indebted to Radmann in the sum of £355, 19s. 6d., under a charter of that steamship, being the difference between the amount of the charter and the freight list furnished to said steamer by the said Radmann, and also in the sum of $396.22, for address commission and freight brokerage on the said cargo. Upon this statement the said garnishee submitted himself as to the further disposition of said money to the orders of this court. Thereupon, on motion of the proctors for Dent, it was ordered that the said garnishee pay into the registry of this court the amount of money admitted by his answer to be due from the owners of the steamship Blagden to the respondent Radmann, upon the charter referred to, which order was complied with on the same day. Subsequently, and on the fourteenth day of December, Dent caused to be issued in his action an *alias* process against Radmann, upon which, on the seventeenth

of December, Radmann was duly served, and on the return day appeared in the cause, and thereafter filed his answer to Dent's libel, denying all liability upon the charter of the steamship Croft, and also denying that he had any credits or effects in the hands of Patterson and the other owners of the steamship Blagden.

Nearly a year after, and on November 7, 1878, the second of the above mentioned actions was commenced by the filing of a libel by John H. Janssen, assignee of the before mentioned Carl Radmann, against the before mentioned William Patterson, John Doe and Richard Roe, owners of the steamship Bladgen, to recover of the said owners the sum of £355, 19s. 6d., and also the sum of $396.22, alleged to have become due by virtue of a charter of said steamer made by Radmann; being the same charter referred to in the answer of Patterson garnishee, in the suit of Dent; which sums Janssen claimed to have become due and payable to him by virtue of an assignment of the said charter of the Blagden by Radmann to him. Process having been duly issued upon this libel of Janssen against Patterson and the other owners of the Blagden, and returned "not found," and it being made to appear to the court that the money paid into the registry in behalf of Patterson, on the eleventh of December, 1877, in the manner already described, was claimed by Janssen to be the money of Patterson and the other owners of the Blagden, applicable to the payment of the debt then due from said owners to him, as alleged in his libel, an order was made impounding the said money in the registry until the further order of the court, and directing that all persons having or claiming to have any interest in said money be cited to appear and answer the claim of Janssen thereto on the twenty-sixth day of March following. Due service of this order having been made by publication, in the manner directed, and by delivering the order to the proctors for the libellant, Dent, upon the return day thereof Dent duly appeared, and all others made default. On the fifth of April following, Dent filed an answer to the libel of Janssen, wherein he accompanies a denial of most of the averments of the libel

with a statement of the ground of his claim to the said money in court, namely, that William Patterson and the other owners of the steamship Blagden were, on the seventh day of December, 1877, indebted to Carl Radmann to an amount equal to the fund in court, which debt had been duly attached as the property of Radmann in the action commenced by him on that day, and had thereafter been paid into the registry under the order of this court. He also asserted that Patterson and the other owners of the Blagden had no interest in said moneys since the payment thereof into the registry, and that Janssen had never had any interest in the same, and was not entitled thereto.

Such being the position of these two actions, the action brought by Dent came on to be tried in regular order upon the calendar, whereupon it was moved in behalf of Dent that the action of Dent and the action of Janssen be consolidated. Dent being represented by the same advocate in both actions, and both Janssen and Radmann being represented by a single advocate, and no opposition to the consolidation being made, the suits were ordered to be consolidated, and thereupon proceeded to hearing upon the pleadings and proofs.

The following are the questions thus presented for determination:

Was Radman indebted to Dent upon the charter of the steamship Croft, as set forth in the libel of Dent, and at the time of filing the same?

Did Dent, by means of the attachment issued in his action and served upon Patterson, the master of the steamship Blagden, on December 7, 1877, acquire an interest in the money now in the registry?

Were Patterson and the other owners of the steamship Blagden indebted to Janssen, assignee of Radmann, upon the charter of the Blagden, as set forth in the libel of Janssen, and at the time of the filing thereof?

If so indebted, is the fund in court applicable to the payment of such debt as being the property of said owners?

In regard to the indebtedness of Radmann to Dent upon the charter of the steamship Croft considerable evidence has

been given, and it is stoutly contended, in behalf of Radmann, that the failure on his part to perform the charter of the Croft according to the terms of the charter-party was caused by neglect on the part of the ship-owners to perform their part of the agreement, and to no fault on his part. But I am of the opinion that the weight of the evidence is in favor of Dent upon this issue, and that Radmann must be adjudged liable to Dent for the damages arising from the failure to load the Croft according to the terms of the contract that had been entered into between them. It follows, therefore, that Dent is entitled to a decree against Radmann awarding him damages for a breach of the said charter, the amount to be ascertained by a reference to the commissioner.

The next question in dispute is whether Dent, by means of his attachment served upon Patterson, the master of the Blagden, on the seventh of December, 1877, acquired an interest in the fund in court which entitled him to have the same, or any part thereof, applied to the payment of the debt so found due him from Radmann.

The facts material to this branch of the controversy are not in dispute. Radmann chartered the steamship Blagden for a voyage from New York to Hamburg, and agreed to provide for her a full cargo for the full freight of £2,700, payable in cash on the right delivery of cargo. The charter party provided that bills of lading were to be signed without prejudice to the charter, and contained also the clause, "any difference between amount of charter and freight list to be settled at port of loading, as customary." In pursuance of this contract Radmann procured a cargo for said vessel from various shippers, for which bills of lading were issued, at such rates of freight that when the vessel was loaded the amount of the freight list exceeded the charter money which Radmann had agreed in the charter-party to pay. Under such circumstances the custom is for the master of the vessel, before he sails, to draw his draft upon himself to the order of the charterer for the amount of the difference between the charter money and the freight list, payable some few days after the arrival of the ship at the port of destination, and upon deliv-

cry to the charterer of such draft, accepted by the master, and paying to the charterer the address commission and freight brokerage, to receive the bills of lading and proceed to sea. The master's draft, when so delivered, is accepted by the charterer as payment of the difference between the charter money and the freight list, and the liability of the master as well as the charterer, upon the charter party, is considered to be settled and ended.

In this instance the vessel, as before stated, completed her loading on December 7th. The excess in the amount of the freight list over and above the charter money which Radmann had agreed to pay on the safe delivery of the cargo, after deducting the inland freight, was the sum of £355, 19s. 6d. The address commission and freight brokerage amounted to $396.22. But no draft of the master was given or tendered to Radmann, nor was the bill for the address commission and freight brokerage paid, because of the service of the attachment in Dent's suit. The refusal of the master to deliver such draft upon demand occurred after the service of that attachment, but on the same day. On the day following Patterson proceeded to sea in pursuance of the charter-party, but before sailing he swore to the answer to be filed for him as garnishee in Dent's suit, and gave to his own agents, Messrs. Tucker & Co., who, by the way, were at the same time the agents and representatives of Dent in this country, his own draft on himself, to the order of Tucker & Co., for the sum of £355, 19s. 6d. payable after the arrival of the Blagden in Hamburg, having previously given his draft for the inland freight of portions of the cargo to the railroad companies entitled to that portion of his freight. This draft of the master given to his agents, and which was for an amount equal to Radmann's portion of the freight of the Blagden when collected, Messrs. Tucker & Co. indorsed and sold for cash, and caused the proceeds thereof, together with the amount of the address commission and freight brokerage, to be paid into the registry of this court, in accordance with an understanding had with Patterson before he sailed, and in the manner hereinbefore described. There is a slight discrep-

ancy between the amount paid into the registry and the amounts stated in Patterson's answer, which I suppose is accounted for by a deduction of the brokerage on sale of the captain's draft, and a further deduction of $10. But as this small difference has not been alluded to by counsel, I do not notice it.

From the foregoing statement it is apparent that at the time of the service of the attachment upon Patterson the only debt due Radmann, attachable in the hands of Patterson or the owners of the Blagden, was the indebtedness of the owners of the Blagden for address commission and freight brokerage. This sum, according to the evidence, became due Radmann in New York, at the completion of the loading of the steamer, and it was therefore a debt attachable, as a credit of Radmann with the owners of the steamer, at the time of the service of the attachment upon Patterson. But there was then no attachable credit arising out of the difference between the charter money and the freight list of the steamer, because the amount of that difference was due only in the event of the delivery of the cargo in Hamburg. Any liability for that difference in freight was dependent upon the performance of the voyage, and the collection of the freight according to the bills of lading. To an action in *assumpsit* by Radmann against Patterson, at the time the attachment was served, the perfect answer would be, that the excess of freight had not been collected, and might never be. There being no cause of action by Radmann against the owners of the Bladgen for this difference of freight, there was no such debt attachable in their hands. Such is the established law. Drake on Attachments, § 541; *Keyes* v. *Milwaukee & St. Paul R. Co.* 25 Wis. ——.

But it is said Patterson, in his answer as garnishee, had admitted an indebtedness for this difference of freight. If the proceeding on the part of Dent was against Patterson personally, to recover the amount of his liability to Dent by reason of the attachment served upon him, there might be force in the suggestion that Patterson would be estopped from denying the existence of such a debt. But here, upon

the motion of the proctors for Dent, Patterson has paid into the registry of the court a sum of money equal to the amount of the debt which Dent claims to have attached in his hands. By this payment any liability on the part of Patterson to Dent, arising out of the service of the attachment upon Patterson, was terminated. The controversy, so far as Dent is concerned, was then transferred to the fund in court, and when, by an order of the court having the fund, made as above stated, the fund was impounded upon the prayer of Janssen, and when thereafter, upon the motion of Dent, the suits of Dent and Janssen were consolidated, no person but Dent having seen fit to appear in the suit of Janssen after due notice, as prescribed by the order of the court in accordance with the practice of the admiralty in dealing with funds in the registry, the proceeding thereupon became in effect a single proceeding *in rem,* to try the title to the fund in court, as between the two attaching creditors, Dent and Janssen. Such being the character of the present proceeding, it is plain that Patterson's statement in his answer is, to say the least, not conclusive, as against Janssen. With more force it might have been contended, although it has not been contended, that Janssen is concluded by the averment in his libel that he had the right to demand and have of and from the said steamship, before her sailing from the port of New York, the difference between the sum agreed to be paid by the charter-party and the amount of freight agreed to be paid by the bill of lading. But when the whole libel is taken together, setting forth, as it does, the charter-party at length, I think that it may, perhaps, be considered that such statement was not intended to be an admission of any fact; especially as an averment of the fact that such difference was due before the vessel sailed for New York would be mere surplusage, for the libel of Janssen was filed November 7, 1878, nearly a year after the departure of the steamer. The only liability on the part of the owners of the Blagden to Radmann, at the time of the service of the attachment in Dent's suit, being, therefore, for the address commission and brokerage, amounting to the sum of $396.22, the interest of Dent in the fund cannot

exceed that sum. Whether he is entitled to that amount is dependent upon the question next to be considered, namely, whether the interest of Radmann in this charter of the Blagden had been transferred to Janssen before the service of the attachment in Dent's suit, as Janssen now claims.

The determination of this question of fact I should have been glad to avoid, if possible, because of the flat contradiction between the witnesses. But, brought as I am to face that question, I am constrained to say that the impression produced upon my mind by the testimony, taken together, is adverse to the position that the interest of Radmann in the charter of the Blagden was transfered to Janssen prior to the attachment of Dent, and my conclusion is that such transfer was subsequent to Dent's attachment. The assignment to Janssen has, therefore, no effect to defeat the operation of Dent's attachment upon the debt then due and owing to Radmann from Patterson, which debt, as already pointed out, amounted to the sum of $396.22, and no more. It follows, of course, that Dent is entitled to have satisfaction of his claim against Radmann, to that amount, out of the fund in dispute.

These conclusions leave little to be said in regard to the claim of Janssen. The libel of Janssen was filed so long after the departure of the Blagden upon the voyage described in the charter that, in the absence of any evidence, or even suggestion, to the contrary, it is proper to infer that the charter had then been performed, and that the freight, payable by the bills of lading delivered to the master, had been collected by him according to their tenor and his duty. At the time of filing Janssen's libel the liability of the owners of the Bladgen, for the difference between the charter money and the freight list, had therefore become fixed and absolute. This, indeed, was admitted on the trial, and the amount of that liability must be conceded to be equal to the fund in court, less the address commission and freight brokerage. It follows that Janssen is entitled to a decree for that amount, and to have his said claim satisfied to that amount out of the remaining money in the registry, the same being, as the evidence shows,

the proceeds of a sale of **Patterson's** own draft upon himself, ·to the order of Tucker & Co., his agents.

I have thus far omitted to notice the effort made by Dent to defeat the claim of Janssen by showing a subsequent assignment of Radmann's claim against Patterson, by Janssen, to Charles Graeff. It would seem to follow, from the conclusion already announced, that the interest of Dent in the fund is confined to the sum of $396.22; that Dent has no standing in court to contest the claim of Janssen to the remainder of the fund. But, without determining the right of Dent to dispute the claim of Janssen to this remainder, it must be held to be competent for this court, when disposing of a fund in its registry, to require proof of the right of Janssen to any part thereof. I therefore notice the fact, proved by Dent, that Janssen, since the commencement of his suit, and on the twenty-seventh of January, 1879, assigned his interest in the said charter to Charles Graeff. In the assignment then executed by Janssen, however, no mention is made of the pending suit, and Graeff, when examined as a witness upon the trial, not only made no application to be made a party to this suit, but seemed to consider that Janssen retained some interest in the claim, notwithstanding the absolute assignment by him. It is not seen how such an assignment can defeat the action of Janssen. It will, however, be proper that Graeff be afforded an opportunity to apply to be made a party to this proceeding by formal notice of the decree about to be entered herein before entering the same. Such notice will be directed upon the application of either party within five days from the date of this opinion. Upon service of such notice a decree will be entered, directing that out of the fund in court the libellant Dent be paid the sum of $396.22, less the fees of officers of court in his suit, in satisfaction, *pro tanto*, of the amount adjudged to be due him from Carl Radmann, upon the charter of the steamship Croft, in the pleadings mentioned; and that the remainder of the fund, less the fees of officers of court in the suit of Janssen, be paid to Janssen, or to Graeff, if his interest is made to

appear, in satisfaction, *pro tanto*, of the amount adjudged to be due him upon the charter-party of the steamship Blagden, in the pleadings mentioned.