**FLORIDA CONFERENCE ASSO-
CIATION OF SEVENTH-
DAY ADVENTISTS**

v.

Anastassios N. KYRIAKIDES, et al.

No. ED CV 00–781–RT(RCx).

United States District Court,
C.D. California.

July 5, 2001.

Holland & Knight LLP, Matthew P. Vafidis, Devin C. Courteau, San Francisco, CA, for Plaintiff.

Stutz, Gallagher, Artiano, Shinoff & Holtz, A Professional Corporation, Bret W. Eubank, Esq., Temecula, CA, for Garnishee Venture Net Capital Group, Inc.

TIMLIN, District Judge.

## ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF ORDER REQUIRING VENTURE NET CAPITAL GROUP, INC. TO PAY $179,000 INTO THE REGISTRY OF THE COURT.

The court, Judge Robert J. Timlin, has read and considered plaintiff Florida Conference Association of Seventh–Day Adventists ("Plaintiff")'s motion for entry of an order requiring garnishee Venture Net Capital Group, Inc. ("Garnishee") to pay $179,000 into the registry of the court pursuant to the Supplemental Rules For Certain Admiralty and Maritime Claims, Rule B ("Rule B"), Garnishee's opposition, and Plaintiff's reply. Based upon such consideration, the court concludes as follows:

## I.

## BACKGROUND

On October 4, 2000, Plaintiff filed a verified complaint (the "Complaint") in this court. In the Complaint, Plaintiff alleges that defendants Anastassios N. Kyriakides ("Kyriakides") and Royal Venture Cruise Line, Inc. ("Defendants") accepted $110,000 from Plaintiffs pursuant to the terms of a maritime charter party. The payment was a deposit on a cruise for a large group of Seventh-day Adventist youth on the vessel Sun Venture. Plaintiff further alleges that Defendants breached the charter party by failing to undertake the cruise and by refusing to refund the deposit. Finally, it is alleged that while Defendants cannot be found within the

Central District of California, Garnishee, a corporation located within the Central District, owes defendant Kyriakides $536,000 on a promissory note (the "Note").

Also on October 4, 2000, United States Magistrate Judge Rosalyn M. Chapman issued a writ of maritime attachment on the Note pursuant to Rule B ("Attachment").

On November 8, 2000 Garnishee filed an answer (the "Answer"), admitting that it is obligated to Defendant in the principal amount of $536,000 (plus accrued interest), but denying that the Note was due and payable.

Plaintiff offers evidence that subsequent to filing the Answer, Garnishee filed two quarterly reports (on Form 10–QSB) with the Securities and Exchange Commission ("SEC") for the quarterly periods ending November 30, 2000 and February 28, 2001 ("SEC Reports"), in which Garnishee admits that payment on the Note is now due and states that it is having financial difficulties that have raised doubts as to its ability to continue as a going concern. Plaintiff contends that, in light of Garnishee's admission and potential dissolution, the court should exercise its discretion to order Garnishee to pay $179,000 into the registry of the court.

Garnishee asserts that such an order would be inappropriate for three reasons: (1) the evidence, offered by Plaintiff to support its contention that debt is due and payable, is inadmissible hearsay; (2) even assuming the evidence is admissible, there remains a factual dispute as to whether the Note is due and payable; and (3) the court lacks authority to issue the order.

## II.

## ANALYSIS

Rule B, subsection 1 provides that "[i]n an in personam action: (a) If a defendant is not found within the district, a verified

complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process."[1] Rule B, subsection 3 provides that "[t]he garnishee shall serve an answer...within 20 days after service of process upon the garnishee.... If the garnishee admits any debts, credits, and effects they shall be held in the garnishee's hands or paid into the registry of the court, and shall be held in either case subject to the further order of the court."

## A. Admission of Debt

As noted above, Plaintiff has offered into evidence an SEC Report submitted by Garnishee to the SEC and filed on January 22, 2001 (the "January 22nd Report") and a copy of an SEC Report submitted by Garnishee to the SEC and filed on April 23, 2001 (the "April 23rd Report").

The text of the January 22nd Report provides with respect to a $536,000 promissory note: "[t]he Company is presently in default on payment of this obligation." January 22nd Report at 22.[2] In the text of the April 23rd Report, Garnishee indicates that while payment on that same promissory note was due as of November 27, 2000, it had not yet been paid. *See* April 23rd Report at 10. In both the SEC Reports,

Garnishee states "[t]hese and other factors raise doubt about [Garnishee's] ability to continue as a going concern." January 22nd Report at 23; April 23rd Form at 12.

Garnishee does not offer evidence which would tend to prove that the SEC Reports refer to a different promissory note than the one attached by writ, and it does not contend that the information contained within the SEC Reports is inaccurate. Instead, Garnishee objects to admissibility of the SEC Reports on the ground that they are hearsay.[3] The substance of Garnishee's objection is unclear.

■ To the extent that Garnishee contends that the statements contained within the SEC Reports are hearsay, it is incorrect. The text of the SEC Reports indicates that they were submitted by Garnishee, and Garnishee does not offer evidence to the contrary. As a party to this action, Garnishee's admissions are not hearsay. *See* Fed.R.Evid. 801(d)(2)(A).

■ To the extent that Garnishee contends that the **act** of placing the SEC Reports on the internet or the **act** of printing them off the Lexis–Nexis website are hearsay, it is again incorrect. Only nonverbal conduct which is intended as an assertion is hearsay. *See* Fed.R.Evid. 801(a)(2) ("non verbal conduct of a person

---

1. This is the current version of Rule B, subsection 1, as amended on April 17, 2000 and effective December 1, 2000. The language of Rule B, Section 1, as it appeared at the time this action was filed is as follows: "[w]ith respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees to be named in the process to the amount sued for, if the defendant shall not be found within the district."

2. For convenience the court refers to the page numbers bate-stamped on the SEC Reports by Plaintiff.

3. Garnishee also raised an authenticity objection. The court concludes based on the context in which Plaintiff obtained the documents as well as the content and appearance of the documents that they are authentic. It therefore overrules the objection. The court notes that Garnishee, who filed the SEC Reports, did not offer evidence that would support a finding that the SEC Reports are not authentic. *See Weinstein's Federal Evidence* § 901.06[1]

if it is intended by the person as an assertion [is a 'statement' for the purposes of Fed.R.Evid. 801(c) ].''); *United States v. Brock*, 667 F.2d 1311, 1315 n. 2 (9th Cir. 1982); Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 801.10[2][c] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2001).

The cases cited by Garnishee are inapposite. In both *United States v. Jackson*, 208 F.3d 633 (7th Cir.2000) and *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F.Supp.2d 773 (S.D.Texas 1999), the courts concluded that statements posted on websites by non-parties were inadmissible hearsay. *See Jackson*, 208 F.3d at 637 (rejecting the defendants' contention that the statements were business records of the Internet service providers); *St. Clair*, 76 F.Supp.2d at 774. As the court concluded above, the statements made in the SEC Reports are non-hearsay because they are party-admissions.

Therefore, the court concludes that the SEC Reports are admissible and has considered them in determining the instant motion.

## B. Due and Payable Status of the Note

In the alternative, Garnishee contends that, even if the SEC Reports are admissible, the following language in the April 23rd Report[4] creates a factual dispute as to the due and payable nature of the Note:

VentureNet will repay the outstanding loan payable of approximately $535,000 as of May 31, 2000, within 180 days, provided, however, that if VentureNet completes any equity or debt financing before the maturity date of the note, VentureNet shall pay twenty percent (20%) of all gross proceeds raised in any equity or debt offering(s) within ten (10) days from the closing of such offerings(s), toward payment of the note. Interest at the rate of 6% per annum will accrue on this note from the date of closing until paid. The default rate of interest of 9% per annum will accrue from the default date until paid in the instance that the loan is not paid on a timely bases.

Garnishee interprets this language as indicating the existence of an agreement to extend the time for the payment of the Note indefinitely. This interpretation finds no support in the language of the April 23rd Report because the cited Report excerpt clearly provides that the Garnishee agreed that it "will repay [the Note] within 180 days" from May 31, 2000, i.e. November 27, 2000. Furthermore this contention is inconsistent with Garnishee's unambiguous admission in the January 22nd Report that "[t]he Company is presently in default on payment of [the Note]." The court therefore concludes that Garnishee has failed to offer evidence, which creates a factual dispute as to the due and payable nature of the Note.[5]

Therefore, the court concludes that the Garnishee has admitted that its debt on the Note is due and payable to Defendant.

## C. Authority to Issue Order

The question whether Rule B authorizes the court to order a garnishee to pay an admitted debt due and payable into the registry of the court appears to be one of first impression in the federal courts.[6]

---

**4.** The January 22nd Report includes nearly identical language.

**5.** Garnishee also contends it "may have defenses to the payment of the note that would be raised in a lawsuit brought by the defendant to compel early payment of the note." *See* Memorandum in Opposition to Plaintiff's Motion for Entry of Order Requiring Payment of Garnished Debt into Court at 4. To the extent that Garnishee has such defenses, it did not provide any evidence regarding them.

**6.** Plaintiff cites a number of cases, in which the court ordered the garnishee to pay money into the registry. The court cannot deter-

The question implicates statutory interpretation.

As noted above Rule B provides that "[i]f the garnishee admits any debts, credits, or effects, they shall be held in the garnishee's hands or paid into the registry of the court, and shall be held in either case subject to the further order of the court." The parties proffer two differing statutory constructions. Under Garnishee's construction, the garnishee may either hold the debts, credits or effects or pay them into the registry at **garnishee's** election. Plaintiff contends, however, that the language of Rule B provides the court with discretion to determine whether the debts, credits or effects should be paid into the court.

 "[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete," *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (citations omitted); keeping in mind, of course, that "the meaning of words depends on their context." *Shell Oil Co. v. Iowa Dept. of Revenue*, 488 U.S. 19, 25 n. 6, 109 S.Ct. 278, 102 L.Ed.2d 186 (1988) (citing *NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2nd Cir.1941) ("Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpene-

trate the other, but all in their aggregate take their purport from the setting in which they are used....")). Furthermore, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *United States v. Smith*, 155 F.3d 1051, 1057 (9th Cir.1998). Finally, "[w]e may not interpret a statute so as to render some of its language superfluous; at any rate, we may not do so lightly." *Hearn v. W. Conference of Teamsters Pension Trust Fund*, 68 F.3d 301, 304 (9th Cir.1995); *see also Beisler v. Commissioner of Internal Revenue*, 814 F.2d 1304, 1307 (9th Cir.1987) (en banc) ("We should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress.").

 The court concludes that Rule B unambiguously vests the court with discretion to order a garnishee to pay a matured debt into the registry. *See DeGeorge v. United States Dist. Ct. for the Central Dist. of California*, 219 F.3d 930, 939 (9th Cir.2000) ("A statute is ambiguous if it gives rise to more than one reasonable interpretation."); 2A Norman J. Singer, *Sutherland Statutory Construction* § 45:02 (6th ed.2000) (same). Here, Rule B provides that the holding of the debts, credits and effects is "subject to the **further** order of the court." Rule B (emphasis added). The New Shorter Oxford English Dictionary (1993) defines the word "further" as: "3. In addition, additionally." Therefore, the court concludes that the use of the word "further," demonstrates that

mine, however, from reading these decisions whether the garnishee resisted paying the money into the registry. Nor did any of the courts examine the question whether Rule B provided authority for such an order. *See Iran Express Lines v. Sumatrop, AG*, 563 F.2d 648, 652 (4th Cir.1977); *MCT Shipping Corp. v. Sabet*, 497 F.Supp. 1078, 1082 (S.D.N.Y. 1980); *Dent v. Radmann*, 1 F. 882, 883

(E.D.N.Y.1880). Plaintiff also cites *Polar Shipping* for the proposition that the district court has discretion to order monies paid into the registry. However, the portion of *Polar Shipping* cited to by Plaintiff does not touch this issue; instead, it addresses discretion to enforce a foreign court selection cause. *See Polar Shipping*, 680 F.2d at 632–33.

the drafters intended that the court could **first** order that the debt be paid into the registry. Nothing in the language of Rule B indicates that the drafters intended that the Garnishee be the one to decide whether the debts or credits should, or should not be paid into the registry.

Even were the court to conclude that the language of Rule B is ambiguous, the court's interpretation is still consistent with the legislative history and purpose of the rule.

Legislative history regarding Rule B is sparse. The Supreme Court first promulgated the admiralty rules in 1844. *See* 29 James Wm. Moore et al., *Moore's Federal Practice* § 701.04[1] (3d ed.1997). The procedure for attachment and garnishment was then addressed by Admiralty Rule 37, which provided:

> In cases of foreign attachment, the garnishee shall be required to answer on oath or solemn affirmation, as to the debts, credits or effects of the defendant in his hands, and to such interrogatories touching the same as may be propounded by the libellant; and if he shall refuse or neglect to do so, the court may award compulsory process in personam against him. If he admits any debts, credits or effects, the same shall be held in his hands liable to answer to the exigency of the suit.

The Admiralty Rules of 1844 were amended when the Supreme Court promulgated new rules in 1920. *See id.* Admiralty Rule 37 was supplanted by Admiralty Rule 36. *See* 29 James Wm. Moore et al., *Moore's Federal Practice* § 701.04[3]. The first sentence remained functionally identical; the last sentence,

however, was modified as follows: "[i]f he admits any debts, credits or effects, the same shall be held in his hands, *or paid into the registry of the court and shall be held in either case subject to the further order of the court*." *See id.* (emphasis added). This language did not change with the merger of the Admiralty Rules into the Federal Rules of Civil Procedure in 1966; Rule 36 was merely subsumed by Rule B(3).

The court has been unable to locate any reports or commentaries by the U.S. Supreme Court or Congress, which explain the reason for the addition of the new language in 1920.[7] The court believes, however, that the fact that the "further order of the court" language was added at the same time as the "or paid into the registry" language, supports the court's view that the Supreme Court intended that the court have discretion to **first** order the debt or credit paid into the registry. If the Supreme Court did not so intend, it could have left the last clause, "shall be held...liable to answer to the exigency of the suit," unchanged.

In addition, providing the court with discretion to order a garnishee to pay a debt or credit into the registry would be consistent with the purpose of Rule B. "The process of foreign attachment...has two purposes: to secure a respondent's appearance and to assure satisfaction in case the suit is successful." *Swift & Co. Packers v. Compania Columbiana del Caribe*, 339 U.S. 684, 693, 70 S.Ct. 861, 867, 94 L.Ed. 1206 (1950). By authorizing the court to order debts or credits paid into the registry, Rule B empowers the court to ensure that the security attached

7. The court has also reviewed the discussions relating to attachment and garnishment contained in the records of the U.S. Judicial Conference, Committee on Admiralty Procedure from 1935 to 1988. Although there was a great deal of discussion regarding the merger of Admiralty Rules with the Federal Rules of Civil Procedure, the Committee apparently did not discuss the question of the court's discretion to order moneys paid into the registry pursuant to Rule B.

is protected—either from a garnishee that seeks to abscond with it, or as in this case, from the insolvency of the garnishee.

Garnishee contends that it is unlikely that the Supreme Court had these dangers in mind when promulgating the Admiralty Rules of 1920. This point is well taken. The primary concern driving the creation of the right of attachment and garnishment was the transitory nature of maritime commerce, *see Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir.1982) ("A ship may be here today and gone tomorrow, not to return for an indefinite period, perhaps never. Assets of its owner, including debts for freights, as in this case, within the jurisdiction today, may be transferred elsewhere or paid off tomorrow. It is for this reason [that Rule B was] developed"), yet Rule B allows attachment of debts, credits and effects which have no relationship to maritime commerce. *See* 29 James Wm. Moore et al., *Moore's Federal Practice* § 705.04[1]. Nevertheless, it is beyond debate that empowering the court to order a debt or credit paid into the registry still furthers the goal of assuring satisfaction (in whole or in part) if the plaintiff is successful in its litigation.

In summary, the court concludes that under the language of Rule B it has the discretion to order Garnishee to pay into the court's registry $179,000, which is a portion of the money due and payable on the Note.

■ The only remaining question is what criteria the court should apply in exercising that discretion. The court is guided by the avowed purpose of the rule—assuring satisfaction in case Plaintiff prevails in the underlying litigation. Here, Plaintiff has offered undisputed evidence that the Garnishee is having financial difficulties which might prevent it from paying on the Note in the future. Garnishee has failed to offer evidence of any alternative security which it could provide as a guarantee equally comparable to its depositing $179,000 into the court's registry. Absent such evidence, the court will exercise its discretion to order Garnishee to pay $179,000 into the registry of the court.

## III.

## DISPOSITION

ACCORDINGLY, IT IS ORDERED THAT:

(1) Plaintiff's motion is GRANTED; and

(2) Garnishee shall pay $179,000 into the court's registry within 45 days of the date of this order.